IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:19-CR-07 JUDGE RWS/JDL |
| DANIEL DRIVER (01) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1. **Daniel Driver** resided in or around Atlanta, Georgia.

2. Theodore Robert Wright III (T.R. Wright) resided in or around Kemah, Texas, and Las Vegas, Nevada.

3. Raymond Fosdick resided in or around Rock Hill, South Carolina, and Houston, Texas.

4. Philippe Charles Henri Ardouin (Philippe Ardouin) resided in or around Marseille, France.

5. Edward Delima resided in or around Honolulu, Hawaii.

6. Theodore R. Wright Enterprises, Inc. was a Montana corporation. Incorporated on June 25, 2014, the company is currently active. T.R. Wright is the President and Director.

7. Carissus, LLC was a Texas limited liability corporation. Formed on February 3, 2013, the company is currently active. Carissus, LLC was also formed as a

separate Montana limited liability corporation on November 5, 2013. T.R. Wright is the Manager of the Montana entity, which is currently active.

8. Excellent Aviation, LLC was a Texas limited liability corporation. Formed on August 19, 2013, the company is currently inactive.

9. Plaisir en Vol, Inc. was a Montana corporation. Incorporated on March 18, 2014, the company is currently inactive.

10. Hartmann Sanford Group, Inc. was a Texas corporation. Incorporated on November 12, 2014, the company is currently inactive. The company was associated with T.R. Wright and others.

11. Concorde Bay Management Group, Inc. was a Delaware corporation. Incorporated on June 23, 2016, the company is currently active.

12. T.R. Wright and his co-conspirators utilized numerous bank accounts related to the entities described above, as well as bank accounts related to other entities and individuals, at Wells Fargo Bank, JP Morgan Chase Bank, Capital One Bank, and U.S. Bank, and other financial institutions.

## COUNT 1

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

1. The General Allegations section of this indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or about March 2014, and continuing through in or about August 2017, the exact dates being unknown to the grand jury, in the Eastern District of Texas

and elsewhere, the defendant, **Daniel Driver**, along with T.R. Wright, Raymond Fosdick, Edward Delima, and others, both known and unknown to the grand jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud, that is to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

### Purpose of the Conspiracy

3. It was the general purpose of the conspiracy for the defendant and his co-conspirators to defraud insurance companies and unlawfully obtain money from such insurance companies by means of false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. To achieve the goals of the conspiracy, the defendant and his co-conspirators acquired various vehicles, aircraft, and vessels.

5. The defendant and his co-conspirators obtained insurance coverage for the acquired vehicles, aircraft, and vessels in amounts exceeding the purchase prices of those vehicles, aircraft, and vessels.

6. The defendant and his co-conspirators devised and carried out schemes to destroy the vehicles, aircraft, and vessels.

7. The defendant and his co-conspirators defrauded insurance companies and obtained money from insurance companies by means of false and fraudulent pretenses, representations, and promises.

8. The defendant and his co-conspirators obtained control of the funds paid by the insurance companies and used the monies for their personal benefit, as well as that of others.

## Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

**1971 Cessna 500 N18FM**

9. On or about March 14, 2014, Excellent Aviation, LLC purchased a 1971 Cessna 500 aircraft, United States Aircraft Registration Number N18FM, for $190,000.00.

10. On March 18, 2014, Plaisir en Vol, Inc. was incorporated.

11. On or about March 24, 2014, Plaisir en Vol, Inc. purchased the aircraft from Excellent Aviation, LLC.

12. On or about March 28, 2014, Plaisir en Vol, Inc. insured the aircraft for $440,000.00. The insurance premium payments were made from a Wells Fargo account held in the name of Carissus, LLC.

13. On or about April 29, 2014, T.R. Wright sent an email to Philippe Ardouin and another individual. An abridged excerpt of the communication is as follows:

> I hope we win this Citation II. If we do, I say we run 18FM for another 3 months or so and then get rid of it, free up $400,000 in capital for other deals.

14. On or about May 8, 2014, Philippe Ardouin sent an email to T.R. Wright and carbon copied another individual. An abridged excerpt of the communication is as follows:

> I continue on TR's email to put my thoughts and ideas for discussion...
> Citation 500:
> About the Citation N18FM, I'm working hard to get a big contract with lots of hours for the summer or end of the year so we probably will have to ferry it at a point. I think we can still make good money from it before selling or Plan C.

15. On or about June 17, 2014, T.R. Wright sent an email to Philippe Ardouin and another individual. An abridged excerpt of the communication is as follows:

> Guys, I am ready to get this thing over there and start making $$. We all three need it.
> Another thing is that the arrangement on 18FM is not working out. I believe this aircraft may be more valuable to us if we Plan C it and then apply that $ to another aircraft.
> Obviously we know what we can write in an email and what we cannot.

Please share with me your thoughts and feel free to call me tomorrow to discuss in further scope.

16. On or about August 29, 2014, T.R. Wright flew the aircraft to Athens, Texas.

17. On or about August 29, 2014 and August 30, 2014, Raymond Fosdick flew to Athens, Texas, to destroy the 1971 Cessna 500.

18. On or about August 29, 2014 and August 30, 2014, while Raymond Fosdick was in Athens, Texas, T.R. Wright and Raymond Fosdick communicated through iMessage. Abridged excerpts of their communications are as follows:

| | |
|---|---|
| T.R. Wright: | Just don't look suspicious there |
| Raymond Fosdick: | I can dump it and get avgas |
| T.R. Wright: | Or go dump it out and just fill with car gas |
| | Land somewhere else, dump it out and use the 24hr self serve? |
| Raymond Fosdick: | I know |
| | I'm at the airport |
| T.R. Wright: | I'm in. Go for launch. |
| Raymond Fosdick: | Now |
| T.R. Wright: | Now |
| | Send confirmation when able please. |
| Raymond Fosdick: | Plane will not start |

| | |
|---|---|
| T.R. Wright: | Don't kill the battery. Let it sit for a minute. |
| | It's probably flooded. Try to start with throttle open and mixture pulled |
| Raymond Fosdick: | That's what I'm doing |
| T.R. Wright: | 20 minutes till 0500. What's up |
| | Is the job done? |
| Raymond Fosdick: | Still hasn't started |
| | No setup but not done |
| | Old man just showed up |
| T.R. Wright: | [Expletive] |
| | Have your story straight and don't [expletive] around |
| | Obviously we don't know each other |
| | I don't [expletive] know dude. I don't [expletive] know. This is totally [expletive] up. |
| | I really hope nobody goes and looks in the plane |
| Raymond Fosdick: | What am I supposed to do |
| | I can't do anything w him here |

19. On or about August 30, 2014, Raymond Fosdick left Athens, Texas, and returned to South Carolina.

20. On or about September 12, 2014, Raymond Fosdick flew back to Texas, to destroy the 1971 Cessna 500.

21. On or about September 12, 2014 and September 13, 2014, T.R. Wright and Raymond Fosdick communicated through iMessage. Abridged excerpts of their communications are as follows:

| | |
|---|---|
| T.R. Wright: | Did you get some switcheroos? I'm nervous about somehow having this thing spotted and getting linked back to sink us. I would feel much better if we could disguise it slightly |
| T.R. Wright: | Car is at 18150 McKay Blvd, Humble, TX 77338 Sleep inn. Black Altima key in cup holder. Taxi there. Then you can leave it at Conroe when finished |
| T.R. Wright: | Do not get made in that car or it will sink us. I would really like if you can have some switcheroos |
| Raymond Fosdick: | It's done |

22. On or about September 13, 2014, Raymond Fosdick, acting at the direction of T.R. Wright, set the 1971 Cessna 500 on fire, destroying the aircraft completely.

23. From on or about September 15, 2014 to on or about September 17, 2014, a co-conspirator made multiple phone calls to the Athens Fire Marshal during which he

informed the Fire Marshal that he would provide investigators with information related to the pilot and ownership/management of the 1971 Cessna 500.

24. On or about September 16, 2014, the same co-conspirator communicated with the Athens Fire Marshal by email during which he falsely and fraudulently represented that Philippe Ardouin was responsible for the ownership/management of the aircraft.

25. On or about September 17, 2014, Philippe Ardouin communicated with the Athens Fire Marshal by email during which he falsely and fraudulently represented his ownership/management of the aircraft, the relationship between T.R. Wright and the aircraft, and T.R. Wright's true name.

26. From on or about September 17, 2014 to on or about September 22, 2014, T.R. Wright made multiple phone calls to the Athens Fire Marshal during which he falsely and fraudulently represented certain information about the aircraft, including his relationship with the aircraft, the condition of the aircraft, and the ownership/management of the aircraft. On at least one occasion, T.R. Wright used a satellite phone to communicate with the Fire Marshal.

27. On or about September 17, 2014, a co-conspirator filed an insurance claim for the loss of the 1971 Cessna 500. The co-conspirator communicated with the insurance company by email and cell phone.

28. On or about January 26, 2015, the same co-conspirator provided the insurance company with a notarized document wherein he made false and fraudulent representations.

29. On or about February 4, 2015, T.R. Wright and his co-conspirators caused the insurance company to issue a check in the amount of $440,000.00 made payable to Plaisir en Vol, Inc., through its law firm, Coats and Evans, P.C.

30. On or about February 11, 2015, the check was deposited in a Coats and Evans, P.C. IOLTA account at Woodforest National Bank. The check was endorsed by the director of Plaisir en Vol, Inc.

31. On or about February 4, 2015, a wire transfer of $50,000.00 was made to a title company from a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or [redacted], POA" for the purchase of a Gates Learjet, Model 35A, Serial Number 476.

32. On or about February 23, 2015, Coats and Evans, P.C., transferred $436,611.50 by wire transfer to the same title company for the purchase of the Learjet.

33. On or about February 27, 2015, according to Federal Aviation Administration (FAA) records, the Learjet was purchased by Theodore R. Wright Enterprises, Inc.

34. On or about December 1, 2016, T.R. Wright and a co-conspirator communicated by phone with a Special Agent from the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives during which they made materially false, fictitious, and fraudulent statements and representations concerning the 1971 Cessna 500 and the circumstances surrounding the fire which destroyed the aircraft.

**1998 Hunter Passage**

35. On or about October 6, 2014, Theodore R. Wright Enterprises, Inc. purchased a 1998 Hunter Passage for $50,150.00. The vessel was paid for by two wire transfers from a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or [redacted], POA."

36. On or about November 5, 2014, the Hartmann Sanford Group, Inc. "loaned" Edward Delima $193,500.00 for the purchase of the vessel.

37. On or about November 6, 2014, Edward Delima insured the vessel for $195,000.00 at which time he made false and fraudulent representations to the insurance company. The insurance premium payments were made from a Capital One credit card account held in the name of T.R. Wright.

38. On or about November 7, 2014, Theodore R. Wright Enterprises, Inc. "sold" the vessel to Edward Delima. The bill of sale shows that a co-conspirator signed as seller on behalf of Theodore R. Wright Enterprises, Inc.

39. On or about November 12, 2014, the Hartmann Sanford Group, Inc. was incorporated.

40. On or about February 20, 2015, the vessel was extensively damaged due to partially sinking in a marina in Ko Olina, Hawaii.

41. On or about February 27, 2015, T.R. Wright and Edward Delima communicated through Facebook. Excerpts of their communications are as follows:

> T.R. Wright: when will you be avail for a 15 min call
>
> Edward Delima: how are we gonna handle this

|  |  |
|---|---|
|  | I don't want to [expletive] this up its a lot of money |
| T.R. Wright: | I think you and I should be on the phone together for the claim call, I pretend to be you and give them all the info, then you will hear everything so you know what to say later, and we will be on messenger if we need to communicate while we are on the phone with them. thoughts? |
|  | might need to be tomorrow before I can though |
| Edward Delima: | Sounds good |
|  | I wanna make sure we are on the same page with all of this |
|  | Probably make a fact page of notes |
| T.R. Wright: | good thinking |
|  | so we do tomorrow after your work? |
| Edward Delima : | Easier than digging through chats |
|  | Sounds good |

42. On or about February 27, 2015, T.R. Wright and Edward Delima filed an insurance claim for the loss of the vessel in which they made false and fraudulent representations. Among other things, T.R. Wright and Edward Delima falsely and fraudulently represented certain facts related to the vessel, including facts concerning the

Indictment – Page 12

ownership of the vessel, the condition of the vessel, and the reason for the sinking of the vessel. On this date as well as on other dates, T.R. Wright used, directed, and/or assumed the identity of Edward Delima in communications with the insurance company. On such occasions, T.R. Wright and Edward Delima communicated with the insurance company by email and cell phone.

43. On or about November 11, 2015, a co-conspirator communicated with the insurance company by phone wherein he made false and fraudulent representations.

44. On or about July 3, 2015, T.R. Wright, Edward Delima, and their co-conspirators caused the insurance company to issue a check in the amount of $180,023.80 made payable to the Hartmann Sanford Group, Inc.

45. On or about July 6, 2015, the check was deposited into a U.S. Bank account held in the name of T.R. Wright d/b/a Hartmann Sanford Group.

46. On or about July 10, 2015, T.R. Wright transferred $180,000.00 by wire transfer from the U.S. Bank account to a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or [redacted], POA."

**1987 West Coast 87**

47. On or about May 18, 2016, Theodore R. Wright Enterprises, Inc. purchased a 1987 West Coast 87 for $38,000.00.

48. On June 23, 2016, Concorde Bay Management Group, Inc. was incorporated.

49. On or about June 24, 2016, Concorde Bay Management Group, Inc. claimed to purchase the vessel for $745,000.00.

50. On or about June 28, 2016, Concorde Bay Management Group, Inc. and **Daniel Driver** insured the vessel for $700,000.00 at which time **Daniel Driver** made false and fraudulent representations to the insurance company.

51. On or about October 27, 2016, the insurance premium payments were made from an account in the name of **Daniel Driver**.

52. On or about June 21, 2017, **Daniel Driver** and another individual intentionally sank the vessel in the Pacific Ocean, approximately 30 miles off the coast of Ocean Shores, Washington. **Daniel Driver** and the other individual were rescued by the United States Coast Guard. The vessel was not recovered.

53. On or about June 23, 2017, **Daniel Driver** communicated with the insurance company by phone wherein he made false and fraudulent representations, namely that he was the owner of the vessel, that he was the only owner of the vessel, and that he had received a loan for the purchase of the vessel from T.R. Wright.

54. On or about July 11, 2017, **Daniel Driver** communicated with the insurance company via email in which he made false and fraudulent representations. Among other things, **Daniel Driver** falsely and fraudulently represented certain facts related to the vessel, including facts concerning the ownership of the vessel and that T.R. Wright had a $630,631.20 lien on the vessel.

All in violation of 18 U.S.C. § 1349.

# NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

1. The allegations contained in Count 1 of this indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1349, the defendant, **Daniel Driver**, shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3. The property which is subject to forfeiture, includes but is not limited to the following:

    Cash Proceeds:

    A sum of money equal to $60,000.00 in United States currency, and all interest and proceeds traceable thereto, representing the proceeds of the offense.

4. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred, or sold to, or deposited with a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **Daniel Driver**.

    5. By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

TRUE BILL

_02/20/19_  
Date

_/s/_  
GRAND JURY FOREPERSON

JOSEPH D. BROWN  
UNITED STATES ATTORNEY

_[signature]_  
NATHANIEL C. KUMMERFELD  
ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:19-CR-___ JUDGE _____ |
| DANIEL DRIVER (01) | § | |

## **NOTICE OF PENALTY**

### COUNT 1

VIOLATION: 18 U.S.C. § 1349
Conspiracy to Commit Wire Fraud

PENALTY: Imprisonment of not more than twenty (20) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00